UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RONALD DAVIS,

         Plaintiff,

v.                                    Civil Action No. 2:16-cv-06526

UNIVERSAL CABLE HOLDINGS, INC.,
d/b/a SUDDENLINK COMMUNICATIONS,
and JAMES KIZER,

         Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

         Pending is Universal Cable Holdings, Inc.'s

("Universal Cable") motion for summary judgment, filed June 20,

2017.

I. Factual and Procedural Background

         The following background is recounted from the record,

read in the light most favorable to the non-moving party,

plaintiff Ronald Davis ("Mr. Davis").  Mr. Davis began working

as a Broadband Technician ("BBT") I for Universal Cable on July

1, 2006.[1]  (Davis Dep. 16-17.)  On July 11, 2012, Mr. Davis

underwent the first of twelve procedures related to recurring

---

[1] Charter Communications was Mr. Davis's original employer,
hiring him on October 31, 2005.  (Mr. Davis Deposition ("Davis
Dep.") 16.)  Universal Cable acquired Charter Communications in
July, 2016.  (<u>Id.</u> 17.)

pilonidal cysts, resulting in a series of leaves of absence,
(id. 35, 43-44): from July 11, 2012, through August 6, 2012,
(id. 43-44); from November 2, 2012, through December 2, 2012,
(id. 56); and from February 21, 2013, through July 22, 2013,
(id. 62-63).  Universal Cable did not pay Mr. Davis during these
periods, nor during any other leaves of absence.  (Duska Shane
Arbaugh Deposition ("Arbaugh Dep.") 10.)

On August 1, 2012, near the end of his first leave of
absence, Universal Cable offered Mr. Davis a promotion to BBT
IV.  (Davis Dep. 27.)  As a BBT IV, Mr. Davis's job duties
included carrying objects up to seventy-five pounds; climbing
ladders twenty-eight feet high; climbing poles using "gaffs,"
hooks, and a climbing belt; "crawling, bending, reaching, [and]
twisting" through "confined spaces;" and "standing 50-70% of the
time."  (Universal Cable's Ex. A, BBT IV Job Description; see
Davis Dep. 28-32.)

Sometime around March, 2013, Mr. Davis exhausted the
leave to which he was entitled under the Family and Medical
Leave Act and thereafter needed Universal Cable's approval for
any additional leave or other accommodation.  (Davis Dep. 74-
78.)  About four months later, Dr. Zutshi, Mr. Davis's pilonidal
cyst surgeon, recommended that Mr. Davis temporarily be placed
on light duty as a Warehouse Converter Technician ("WCT").  (See

Mr. Davis's Ex. B, Dr. Zutshi Letter of July 25, 2013.)
Universal Cable agreed, and Mr. Davis began light duty as a WCT
on July 25, 2013. (See Davis Dep. 99-102.)

A WCT's job functions include picking up objects from
the floor "to a height of [six] feet;" "lift[ing] up to 70
[pounds];" and "work[ing] in [a] stationary position seated and
standing for extended periods of time." (Universal Cable's Ex.
A, WCT Job Description; see also Davis Dep. 102-04.) As a
practical matter, Mr. Davis's role as a WCT required him to lift
objects of about only five pounds to a height of about three
feet. (Davis Dep. 103-04; 224-25.)

On November 11, 2013, Dr. Zutshi requested that Mr.
Davis remain on light duty for four to six more weeks, at which
point he could return to his duties as a BBT IV. (Universal
Cable's Ex. A, Dr. Zutshi Letters of September 20, 2013, and
November 11, 2013.) Accordingly, Universal Cable extended Mr.
Davis's light duty through December 22, 2013. (Id. Universal
Cable Letter of November 14, 2013.) On December 20, 2013, Mr.
Davis's family physician, Dr. Dumm, recommended that Mr. Davis
continue light duty for two additional months. (Mr. Davis's Ex.
C; see also Davis Dep. 126-28.)

Mr. Davis continued working as a WCT, and sometime in
the following weeks Universal Cable evidently asked Dr. Dumm to

3

clarify Mr. Davis's work restrictions. (See Davis Dep. 129-34; Mr. Davis's Ex. D.) On January 17, 2014, Dr. Dumm responded that Mr. Davis "cannot sit" for more than thirty minutes; "cannot lift" more than ten pounds; had difficulty lifting, standing, and sitting; was in a high degree of pain; and was at "high risk for cyst rupture." (Mr. Davis's Ex. D; see also Davis Dep. 129-34.) Further, Dr. Dumm recommended that Mr. Davis perform "no lifting" and be placed on light duty through April 30, 2014. (Mr. Davis's Ex. D.) Deciding that his continued working as a WCT risked complicating his medical condition, (see Arbaugh Dep. 9, 39-40, 67-69), on January 22, 2014, Universal Cable removed Mr. Davis from light duty and placed him back on leave through April 30, 2014, (see Universal Cable's Ex. A, Universal Cable Letter of January 21, 2014; Mr. Davis's Ex. E; Davis Dep. 129-40).

During this leave period, Mr. Davis received cortisone injections in and underwent arthroscopic surgery on both of his knees. (See Mr. Davis's Exs. F-G; Universal Cable's Ex. A, Dr. Majestro Letters; Davis Dep. 143-59.) On April 25, 2014, Dr. Majestro, Mr. Davis's knee surgeon, informed Universal Cable that Mr. Davis would "remain continuously disabled" for four to six weeks pending a follow-up appointment, scheduled May 6, 2014. (Universal Cable's Ex. A, Dr. Majestro Letter of April

25, 2014.)  After the May 6 appointment, Dr. Majestro cleared Mr. Davis to return to work on May 12, 2014, provided he did no climbing until his next re-evaluation on June 3, 2014.  (Mr. Davis's Ex. F.)  But on May 13, 2014, Dr. Majestro clarified that he expected Mr. Davis to "return to work full[-time] after" June 3.  (Universal Cable's Ex. C, Dr. Majestro Letter of May 13, 2014.)  Universal Cable extended Mr. Davis's leave accordingly.  (Davis Dep. 157-58, 163; Arbaugh Dep. 9, 39-40, 67-69.)

However, at the June 3 follow-up appointment, and at a subsequent June 18 appointment, Dr. Majestro found Mr. Davis "continuously disabled" pending re-evaluation and failed to provide a definite return-to-work date.  (See Universal Cable's Ex. A, Dr. Majestro Letters.)  Finally, after an appointment on July 9, 2014, Dr. Majestro again found Mr. Davis "continuously disabled" and requested extended leave pending his next re-evaluation, scheduled August 12, 2014.  (Mr. Davis's Ex. F.) Instead, Universal Cable fired Mr. Davis on July 11, 2014, stating as follows:

> We have received your most recent doctor's note dated 7/9/2014 stating that you cannot return to work and indicating only that you will be re-examined at your next appointment on 8/12/2014. . . . We cannot extend your leave any further.  Therefore, your employment will be terminated effective 7/11/2014.

Your doctor has given no indication as to whether or when you may be able to return to work in any capacity, which means we cannot consider you for reassignment to an open position. If you are able to return to work at a later date, we invite you to reapply for any open position for which you are qualified. Currently, we have an open dispatch position, and our website is continually updated available job openings [sic]. We invite you to view the [Universal Cable] job postings at www.work4suddenlink.com.

If there are additional circumstances that may be relevant, or that you may wish to bring to the company's attention regarding your absence or your condition, please feel free to contact [Universal Cable].

(Id. Ex. H.) Mr. Davis did not formally apply for the referenced dispatch position, nor did he formally apply for any other jobs with Universal Cable. (See Davis Dep. 172-74.) He told Universal Cable at some point after his knee surgery that he could have worked either as a WCT or at dispatch and asked that he be placed on light duty in one of those positions, but Universal Cable told him that "they wanted [him] exclusively to go back to the BBT IV position." (Id. 172.) Universal Cable notes that he in fact had not been released by his doctors for any duty.

On August 15, 2014, Dr. Majestro cleared Mr. Davis to return to work with no restrictions. (Mr. Davis's Ex. G.) Dr. Majestro's internal notes from May – undisclosed to Universal Cable - indicate that he would have released Mr. Davis to

perform light duty if he believed that light duty were available and, alternatively, believed that long-term disability was Mr. Davis's other option. (See id.) Mr. Davis claims that Universal Cable had an open WCT position from the time his light duty ended until his firing, (id. 233-34), and the termination letter indicates that there was an open dispatch position as well, (Mr. Davis's Ex. H). Universal Cable disputes that it then had an open WCT position. (Arbaugh Dep. 6-7.)

Mr. Davis filed the complaint in this lawsuit in the Kanawha County Circuit Court on July 1, 2016. He claims that Universal Cable discriminatorily discharged his employment based on disability in violation of the West Virginia Human Rights Act ("WVHRA"), West Virginia Code chapter 5, article 11. (Complaint ¶ 30.) The WVHRA proclaims that "[e]qual opportunity in the area[] of employment . . . is hereby declared to be a human right or civil right of all persons without regard to . . . disability." W. Va. Code § 5-11-2 (2014). Correspondingly, the WVHRA provides that

> [i]t shall be an unlawful discriminatory practice . . . (1) [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled[.]"

Id. § 5-11-9(1).

Universal Cable removed the action to this court on July 20, 2016, invoking the court's diversity jurisdiction. On June 20, 2017, Universal Cable filed the pending motion for summary judgment.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2725 (2nd ed. 1983)).

Regarding genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party has the initial burden of "'showing' - that is, pointing out to the

district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). If the movant carries its burden, the non-movant must demonstrate that "there is sufficient evidence favoring [it] for a jury to return a verdict" in its favor. Anderson, 477 U.S. at 249 (citation omitted); see also Dash, 731 F.3d at 311. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash, 731 F.3d at 311 (citing Anderson, 477 U.S. at 252, and Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997)).

## III. Discussion

The Supreme Court of Appeals of West Virginia applies the following burden-shifting analysis regarding discriminatory discharge for disability under the WVHRA:

> In order to establish a case of discriminatory discharge under [the WVHRA], with regard to employment because of a [disability], the complainant must prove as a prima facie case that (1) he or she meets the definition of [having a "disability]," (2) he or she

is a "qualified [individual with a disability],"[2] and
(3) he or she was discharged from his or her job.  The
burden then shifts to the employer to rebut the
complainant's prima facie case by presenting a
legitimate nondiscriminatory reason for such person's
discharge.  If the employer meets this burden, the
complainant must prove by a preponderance of the
evidence that the employer's proffered reason was not
a legitimate reason but a pretext for the discharge.

Syl. Pt. 2, Morris Mem. Convalescent Nursing Home, Inc. v. W.

Va. Human Rights Comm'n, 189 W. Va. 314, 315, 318 (1993).

Neither Mr. Davis's disability nor his discharge, elements one

and three of the prima facie case, are in dispute.  For reasons

set forth below, and drawing all inferences in Mr. Davis's

favor, a reasonable jury could not conclude that a prima facie

case has been made that Mr. Davis was a "qualified individual

with a disability," triggering the protections of the WVHRA.

For that reason, Universal Cable's motion for summary judgment

must be granted.

     Universal Cable argues that Mr. Davis is not a

qualified individual with a disability as defined by the

governing law and, consequently, has failed to prove a prima

facie case of discriminatory discharge.[3]  (Defendant's Memorandum

_____

[2] "In 1998, the Legislature replaced the term 'handicap' . . .
with the synonymous term 'disability.'"  Haynes v. Rhone-
Poulenc, Inc., 206 W. Va. 18, 24 n.8 (1999).  Thus, the court
has altered the language here to match current terminology.

[3] Universal Cable also contends (1) that any claims pertaining to
conduct occurring before July 1, 2014, are time-barred and (2)
that Mr. Davis cannot prove that Universal Cable failed to

in Support ("Mem. in Supp.") 18-20; Defendant's Reply ("Reply")
4.) Specifically, Universal Cable insists that "[n]one of
Plaintiff's communications with [Universal Cable] suggest that
it was foreseeable he would return to work when" Universal Cable
discharged him or that Mr. Davis was physically capable of
performing light duty. (Reply 5, 9.)

Mr. Davis responds that it was "foreseeable" at the
time of his discharge "that an accommodation would allow him to
return to work," and Universal Cable "refused to even determine
whether any [light duty] positions were available" or,
alternatively, to continue his leave. (Resp. 9.) Mr. Davis
points to his prior accommodations, both leave and light duty,
as proof that he could have been accommodated instead of
discharged. (Id. 11.)

Understanding these arguments requires review of case
law under the statute and implementing regulations. "Qualified
individual with a disability" is defined as "an individual who
is able and competent, with reasonable accommodation, to perform

---

reasonably accommodate his disability. (See Mem. in Supp. 12-
18.) Mr. Davis does not contest these points and limits his
argument to the alleged discriminatory discharge. (See
Plaintiff's Response ("Resp.").) The parties also briefed the
court on whether Universal Cable offered mere pretexts for Mr.
Davis's discharge, but, for reasons explained below, the court
need not approach that discussion.

the essential functions of the job." W. Va. Code R. § 77-1-4(4.2) (effective May 19, 1994). A "reasonable accommodation" may include "reassignment to a vacant position for which the person is able and competent . . . to perform, . . . and similar actions." Id. § 77-1-4(4.5.2). Reassignment is not, however, strictly mechanical.

> Determinations about the reasonableness of an accommodation . . . must be done on a case-by-case basis, with careful attention to the particular circumstances and guided by the [WVHRA's] policy of enhancing employment opportunities for those with disabilities through workplace adjustments. Essentially, the law mandates common sense courtesy and cooperation. "Accommodation" implies flexibility, and workplace rules, classifications, schedules, etc., must be made supple enough to meet that policy.

Skaggs v. Elk Run Coal Co., 198 W. Va. 51, 67 (1996); accord id. at 69-70 ("By our ruling today, we do not mean to imply that an employer must create a make-work job or retain someone it does not need. What we do mean to imply is that an employer should assess the extent of an employee's disability and how it can be accommodated. If the employee cannot be accommodated in his or her current position, . . . then the employer should inform the worker of potential job opportunities within the company and, if requested, consider transferring him or her to fill the opening."). Similarly, the WVHRA's implementing regulations provide the following:

> Each individual's ability to perform a particular job must be assessed on an individual basis. An employer

> may refuse to hire or may discharge a qualified
> individual with a disability if, even after reasonable
> accommodation, the individual is unable to perform the
> essential functions of the job without creating a
> substantial hazard to his/her health and safety or the
> health and safety of others.

Id. § 77-1-4(4.7); cf. Skaggs, 198 W. Va. at 70 ("[F]or many

employers, . . . there simply may not be any openings of

sufficient flexibility to make use of a particular employee.  If

that is the case, the employer would be justified in releasing

the employee.").

   As an alternative to reassignment, a "required

reasonable accommodation may include a temporary leave of

absence . . . for the purpose of recovery from or improvement of

the disabling condition that gives rise to an employee's

temporary inability to perform the requirements of his or her

job."  Syl. Pt. 3, Haynes v. Rhone-Poulenc, Inc., 206 W. Va. 18,

19, 31 (1999).  Such a leave of absence should, however, be "of

limited duration, so that following a temporary leave of absence

for treatment and improvement, it is reasonably foreseeable that

the plaintiff is likely to be able to return to work."  Id. at

31 n.17.

   Consequently, although "it is clear, from all the

above, that a duty is imposed upon the employer to reasonably

accommodate the [disabled] employee," Morris, 189 W. Va. at 320,

such duty is limited where it is not "reasonably foreseeable

that the plaintiff is likely to be able to return to work"

following a "totally disabling medical condition," <u>Haynes</u>, 206

W. Va. at 31.  <u>Cf.</u> <u>Skaggs</u>, 198 W. Va. at 69-70 (see above).

This conclusion is reinforced by the similar interpretation in

the federal circuit courts of the anti-discrimination provisions

of the Americans with Disabilities Act, 42 U.S.C. § 12112

("ADA").  <u>See</u>, <u>e.g.</u>, <u>Myers v. Hose</u>, 50 F.3d 278, 283 (4th Cir.

1995) ("[R]easonable accommodation does not require the

[employer] to wait indefinitely for [the employee's] medical

conditions to be corrected, especially in light of the

uncertainty of cure."), abrogated on other grounds by <u>EEOC v.</u>

<u>Stowe-Pharr Mills, Inc.</u>, 216 F.3d 373, 377 (4th Cir. 2000); <u>Moss</u>

<u>v. Harris Cty. Constable Precinct One</u>, 851 F.3d 413, 419 (5th

Cir. 2017) ("Although taking leave that is limited in duration

may be a reasonable accommodation to enable an employee to

perform the essential functions of the job upon return, taking

leave without a specified date to return or, in this case, with

the intent of never returning is not a reasonable

accommodation."); <u>Scruggs v. Pulaski Cty., Ark.</u>, 817 F.3d 1087,

1091-94 (8th Cir. 2016) (finding that discharged employee was

not a qualified individual with a disability when the employee's

doctor restricted her from performing the physical requirements

of either her job or any reasonable accommodations); <u>Lang v.</u>

<u>Wal-Mart Stores East, L.P.</u>, 813 F.3d 447, 451, 455-56 (1st Cir. 2016) (same).

   Both parties ground their positions in the opinions of the Supreme Court of Appeals of West Virginia in <u>Skaggs</u> and <u>Haynes</u>.  First, Mr. Davis insists that <u>Skaggs</u> stands for the proposition that, to be a qualified individual with a disability, "[p]laintiff does not have to establish that he can perform the essential functions of his original job with a reasonable accommodation if a vacant position is available." (Resp. 9.)  Mr. Davis looks for support in Syllabus Point 4 of <u>Skaggs</u>, which holds that

>  [u]nder the [WVHRA], once an employee requests
>  reasonable accommodation, an employer must assess the
>  extent of an employee's disability and how it can be
>  accommodated.  If the employee cannot be accommodated
>  in his or her current position, however it is
>  restructured, then the employer must inform the
>  employee of potential job opportunities within the
>  company and, if requested, consider transferring the
>  employee to fill the open position.

Syl. Pt. 4, <u>Skaggs</u>, 198 W. Va. at 59.  Ostensibly, Mr. Davis interprets <u>Skaggs</u> as making him a qualified individual with a disability by virtue of the available dispatch position and Mr. Davis's claim of an available WCT position at the time of his discharge.  (Resp. 10.)  Universal Cable counters that Mr. Davis could not be a qualified individual with a disability because

Dr. Majestro's letters precluded the offering of light duty. (Reply 8-9.)

Viewed in the light most favorable to Mr. Davis, the record reveals that beginning June 3, 2014, Dr. Majestro found Mr. Davis "continuously disabled" pending Mr. Davis's next re-evaluation. (Mr. Davis's Ex. F.) Mr. Davis had asked sometime after his April, 2014, knee surgery to be placed on light duty either as a WCT or at dispatch, but Universal Cable declined. (Davis Dep. 172.) Instead, Universal Cable discharged Mr. Davis on July 11, 2014, concluding that "[y]our doctor has given no indication as to whether or when you may be able to return to work in any capacity, which means we cannot consider you for reassignment to an open position." (Mr. Davis's Ex. H.) At that time, Universal Cable had an opening at dispatch, (see Davis Dep. 225-27; Mr. Davis's Ex. H), and it disputes whether it had an opening as a WCT, (see Arbaugh Dep. 6-7).

Universal Cable's decision not to place Mr. Davis on light duty at the time of his discharge was entirely consistent with the mandate of Skaggs. Skaggs requires only that, "if requested," an employer "consider transferring the employee to fill" open positions within the organization. Syl. Pt. 4, 198 W. Va. at 59. That decision is guided by the WVHRA's implementing regulations, which grant employers discretion to

deny light duty – even discharge an employee – where any reasonable, available accommodation "create[s] a substantial hazard to [the employee's] health." W. Va. Code R. § 77-1-4(4.7). Mr. Davis insists that light duty was a reasonable accommodation at the time of discharge because Mr. Davis had worked light duty for six months ending in January, 2014, when word from Dr. Dumm limited his ability to work. (Resp. 10-11.) However, the conditions under which Universal Cable previously assigned Mr. Davis to light duty were materially different than when Universal Cable discharged him; namely, Mr. Davis had, in fact, been released for light duty during those intervening six months ending in January 2014. (See Mr. Davis's Ex. B, Dr. Zutshi Letter of July 25, 2013.)

Mr. Davis is correct to note that a reasonable accommodation under the WVHRA can include reassignment to a vacant position that fits within an employee's medical restrictions; however, Skaggs recognizes that "[d]eterminations about the reasonableness of an accommodation . . . must be done on a case-by-case basis." 198 W. Va. at 67. At the time of his discharge, Dr. Majestro had not released Mr. Davis to work at all, with or without restrictions. Although Dr. Majestro's personal notes indicate that he believed that Mr. Davis could perform light duty, Universal Cable cannot be expected to learn

of Dr. Majestro's evaluations that were not made known to it.
Based on that information, Universal Cable had no choice but to
deny Mr. Davis's requests for a light duty assignment regardless
of whether any such positions were available, as doing otherwise
would have doubtlessly posed a "substantial hazard" to Mr.
Davis's medical condition. See W. Va. Code R. § 77-1-4(4.7).
Accordingly, Skaggs does not make Mr. Davis a qualified
individual with a disability.

          The parties dispute the outer limits of an employer's
duty to grant a totally disabled employee – such as Mr. Davis –
"a temporary leave of absence . . . for the purpose of
recovery." See Haynes, 206 W. Va. at 31.  Both parties
reference footnote 17 of Haynes:

> [B]y disabling condition, we refer to a totally
> disabling medical condition of limited duration, so
> that following a temporary leave of absence for
> treatment and improvement, it is reasonably
> foreseeable that the plaintiff is likely to be able to
> return to work.

Id. at 31 n.17.  Universal Cable emphasizes the use of
"reasonably foreseeable" and "likely to be able to return to
work," arguing that Dr. Majestro's letters provided no
indication when or if ever Mr. Davis would return to work.
(Reply 5-6 (emphasis in original).)  Mr. Davis insists that
Haynes requires only that it be "foreseeable that an

accommodation would allow [an employee] to return to work."
(Resp. 9.)

Universal Cable draws the court's attention to Kitchen
v. Summers Continuous Care Center, LLC, 552 F. Supp. 2d 589
(S.D. W. Va. 2008) (Johnston, J.). In that case, the plaintiff
lost her left arm above the elbow after she was involved in an
automobile accident. Id. at 591. After the plaintiff exhausted
her FMLA leave, her physician requested an additional ninety
days of leave but failed to indicate any date upon which the
plaintiff could return to work. Id. at 591, 591 n.4. The
defendant discharged the plaintiff instead of granting her
physician's request for leave. Id. at 591.

In Kitchen, the court noted that "[a]lthough in some
instances additional medical leave may be a reasonable
accommodation, it is only reasonable where it is finite and will
be reasonably likely to enable the employee to return to work."
Id. at 596 (internal quotations omitted) (citing, inter alia,
Myers, 50 F.3d at 283; Haynes, 206 W. Va. at 31 n.17). Because
the plaintiff's physician had failed to "conclude that she would
be able to return to work after the medical leave," Kitchen held
that the plaintiff had failed to make a prima facie case that
she was a qualified individual with a disability. Id. at 598.

In reaching its decision, <u>Kitchen</u> considered the facts of <u>Haynes</u>. In <u>Haynes</u>, the plaintiff was unable to work due to complications associated with her pregnancy. 206 W. Va. at 20. The plaintiff's physician provided the defendant with an "anticipated return to work date," <u>id.</u> at 20, but the defendant discharged her anyway, <u>id.</u> at 23. Under those circumstances, the Supreme Court of Appeals of West Virginia found that the plaintiff was a qualified individual with a disability because the plaintiff's "temporary inability to perform the requirements of his or her job" would be remedied by the end of her leave, as evidenced by her physician's note. <u>Id.</u> at 31.

In the present case, the facts much more closely resemble <u>Kitchen</u> than <u>Haynes</u>. Although Mr. Davis's injury may not have been as severe as the plaintiff's in <u>Kitchen</u>, the facts are nearly identical considering that "there was nothing in Dr. [Majestro's] note" that could lead a reasonable jury to conclude that Mr. Davis was likely to return to work after August 12, 2014. 552 F. Supp. 2d at 597. Dr. Majestro simply stated that Mr. Davis was "continuously disabled" pending re-evaluation – the same determination he had repeatedly made since April 25, 2014. There was no evidence indicating that the last leave period would be any different. Thus, Universal Cable was well within its right to discharge Mr. Davis. <u>Cf. Skaggs</u>, 198 W. Va.

at 70 ("[F]or many employers, . . . there simply may not be any openings of sufficient flexibility to make use of a particular employee. If that is the case, the employer would be justified in releasing the employee.").

In summary, Mr. Davis, as a BBT IV, was on leave of absence for all of the five months ending July 22, 2013, during the early part of which his Family and Medical Leave Act time ran out. Then, with his doctor's recommendation, he was placed on light duty as a WCT for the next six months. That ended in January, 2014, when Dr. Dumm advised Universal Cable that Mr. Davis was "in a high degree of pain" and was at "high risk for cyst rupture." By virtue of Dr. Dumm's assessment, Universal Cable aptly concluded that Mr. Davis's continued working as a WCT risked complicating his medical condition and, for that reason, removed Mr. Davis from light duty and placed him back on leave for the next three months through April 30, 2014. At that point, Dr. Majestro, who was Mr. Davis's knee surgeon and had just performed arthroscopic surgery on both his knees, informed Universal Cable that he would remain continuously disabled for the next four to six weeks.

Dr. Majestro repeated this same determination from time to time so that Mr. Davis remained continuously disabled and on leave through July 9, 2014, when he once again found Mr.

Davis continuously disabled and requested extended leave pending his next evaluation that was scheduled for August 12, 2014. As a consequence, Universal Cable, on July 11, 2014, discharged Mr. Davis who had been on continuous leave for the past five and a half months with still another month specified before he would again be evaluated. Universal Cable reasonably concluded that no indication had been given as to if or when he could return to work in any capacity; but it did invite him to reapply for any open position for which he was qualified, noting that there was then an open dispatch position.

Lastly, Mr. Davis argues that, inasmuch as Dr. Majestro did in fact release him to work with no restrictions on August 15, 2014, Universal Cable should have accommodated him because he was, in fact, subsequently released. There are, however, no facts here that could have led Universal Cable to believe that Mr. Davis would have been cleared to work on August 15. It should be noted that Universal Cable was tolerant and respectful of Mr. Davis's situation since he first went on leave on two years earlier on July 11, 2012. Accordingly, Universal Cable has shown a lack of "genuine dispute as to any material fact" regarding Mr. Davis's prima facie case of discriminatory discharge under the WVHRA, and Universal Cable's motion for summary judgment is granted.

## IV. Conclusion

For the reasons stated above, the court ORDERS that Universal Cable's motion for summary judgment be, and hereby is, granted.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: November 6, 2017

John T. Copenhaver, Jr.
United States District Judge